UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JAYLYN ROMERO and LEXUS RODRIGUEZ<br><br>Plaintiffs,<br><br>v.<br><br>FLIGHT SERVICES & SYSTEMS, INC. and FRONTIER AIRLINES,<br><br>Defendants. | Civil Action No. 2:23-CV-00416-NT |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

NOW COMES Plaintiff Jaylyn Romero ("Romero"), by and through her undersigned counsel, and opposes Flight Services & System, Inc.'s ("Defendant" or "FSS") Motion to Dismiss. Defendant's Motion to Dismiss lacks merit and must be denied because Romero's Amended Complaint does, both legally and factually, present a plausible claim for Title VII sex discrimination. Plaintiff respectfully requests this Honorable Court deny Defendant's Motion to Dismiss and further states as follows:

I.        INTRODUCTION

Flight Services & Systems, Inc. ("Defendant" or "FSS") terminated Romero, a female employee, at the same time as her boyfriend, Lexus Rodriguez ("Rodriguez"). Defendant never provided a concrete reason for Romero's termination. Among other claims, Romero brought a Title VII claim against Defendant, claiming that she was discriminated against on the basis of her sex because Defendant assumed that she would act in conformity with a sexist stereotype that all women support their male partner. Defendant counters that Romero failed to plead a Title VII sex discrimination claim because her allegation that her work performance was satisfactory was conclusory and because the sexist stereotype that a woman will always support her male partner

1

does not exist. Defendant's Motion to Dismiss impermissibly seeks to impose a heightened pleading standard on employment discrimination claims. Romero is not required to plead a prima facie case or any other element of the *McDonnell-Douglas* framework in a complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). However, even if Romero is required to plead a prima facie case, Romero has plausibly pled one.

## II.   RELEVANT FACTUAL ALLEGATIONS

Romero is female. (Am. Compl. ¶ 119). Romero started working for FSS as a Ticket Agent in August 2021. (Am. Compl. ¶ 120). Romero voluntarily resigned in December 2021. (Am. Compl. ¶ 121). Romero was rehired in January 2022. (Am. Compl. ¶ 122). Romero was qualified for her job and performed her job duties satisfactorily. (Am. Compl. ¶ 123).

Romero's partner, Rodriguez, worked for FSS as a Ramp Agent/Supervisor. (Am. Compl. ¶ 124). In February 19 and 21, 2022, Rodriguez engaged in protected activity under the MWPA. (Am. Compl. ¶ 125). At 3:10pm on February 21, 2022, FSS manager, Witham, texted Romero in the same group text that included Rodriguez and Armstrong and terminated her employment. (Am. Compl. ¶ 126).

In that text message, Witham wrote: "Good afternoon, Effective immediately you are no longer employed by FSS. Please return your SIDA badges to OPS center ASAP. If you have any questions please contact HR." (Am. Compl. ¶ 127).

During the proceedings under the Occupational Safety and Health Act, enforced through the United States Department of Labor, Witham submitted an affidavit in support of FSS's position. (Am. Compl. ¶ 128). In that affidavit, Witham described Rodriguez's conduct. (Am. Compl. ¶ 129). At the end of that affidavit, Witham testified, "After discussion with FSS management, I terminated Rodriguez and Romero due to the above conduct." (Am. Compl. ¶

2

130). During the proceedings at the Maine Human Rights Commission ("MHRC"), Witham stated to the effect that she did not know the reason for Romero's termination, but that the Senior Director of Safety, Phil Armstrong ("Armstrong"), told her to terminate Romero. (Am. Compl. ¶ 132).

Armstrong submitted a statement to the MHRC. (Am. Compl. ¶ 133). In Armstrong's statement to the MHRC, he described Romero's prior employment with FSS before FSS rehired her. (Am. Compl. ¶ 134). In Armstrong's statement to the MHRC, he described that Rodriguez had resigned from his position in December 2021 and that, "After Mr. Rodriguez quit, Ms. Romero failed to appear at her next scheduled shifts. Ms. Witham called Ms. Romero by telephone about her absence. Ms. Romero laughed and stated that she had already turned in her badge and was quitting." (Am. Compl. ¶ 135). In Armstrong's statement to the MHRC, in reference to Romero's termination after her rehire, he stated: "FSS determined at that point that it no longer wished to continue Ms. Romero's at-will employment. While I do not specifically recall advising Arev Witham to terminate Ms. Romero, I believe it was based on Romero's own unpredictable track record at work and *the likelihood that she would once again abandon her employment*. Ms. Romero was not terminated based on her association with Mr. Rodriguez, and Mr. Rodriguez' (sic) workplace conduct did not factor into Ms. Romero's termination." (Am. Compl. ¶ 136).

Romero pled that Armstrong's reason for termination that "the likelihood that she would once again abandon her employment" was an admission that FSS's termination of Rodriguez was a reason for Romero's termination because Romero resigned during her first employment with FSS after Rodriguez resigned so the only plausible reason there was a "likelihood" that Romero would allegedly "once again abandon her employment" was because Rodriguez was no

3

longer employed with FSS. (Am Compl. ¶ 137). FSS fired Romero because of sex

discrimination, that is, a sexist stereotype that a female partner will always support her male

partner's actions, or, that a female partner has the ability and obligation to control her male

partner.  (Am. Compl. ¶ 141).

III.    ARGUMENT

The crux of Defendant's argument is that Plaintiff has not pled a prima facie case of sex

discrimination in her Amended Complaint. Defendant contends that (1) Romero's allegation that

she performed her work duties satisfactorily is conclusory and (2) the sexist stereotype that

women always support their male partner does not exist and is conclusory. Both contentions lack

merit when viewed under the Fed. R. Civ. P. 12(b)(6) and the U.S. Supreme Court's decision in

*Swierkiewicz,* 534 U.S. at 506.

A.  The Applicable Standard Governing Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

In ruling on a motion to dismiss, a court must "accept as true all well-pleaded facts and

draw all reasonable inferences in plaintiff's favor."  *Pena-Borrero v. Estremeda*, 365 F.3d 7, 11

(1st Cir. 2004).[1] "[A] complaint may be dismissed for failure to state a claim 'only if it is clear

that no relief could be granted under any set of facts that could be proved consistent with the

allegations.'" *Id.*   Dismissal of a complaint pursuant to Rule 12(b)(6) is inappropriate if the

complaint satisfies Rule 8(a)(2)'s requirement of "a short and plain statement of the claim

showing that the pleader is entitled to relief," *Ocasio-Hernandez v. Furtuno-Burset*, 640 F.3d 1,

---

[1] Defendant filed its motion to dismiss under Fed. R. Civ. P 12(b)(6) after it submitted its responsive pleading.
Accordingly, the motion to dismiss is untimely. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses
must be made before pleading if a responsive pleading is allowed."). An untimely motion to dismiss under Fed. R.
Civ. P. 12(b)(6) is treated as a motion for judgment on the pleadings. *See Patrick v. Rivera-Lopez*, 708 F.3d 15, 18
(1st Cir. 2013). (explaining that the district court should have treated the defendant's untimely motion to dismiss as
a motion for a judgment on the pleadings). Consequently, Defendant's motion for a judgment is analyzed under Fed.
R. Civ. P. 12(c).[1] However, courts generally analyze a motion for judgment on the pleadings according to the same
principles as a motion to dismiss. *See Id.*

11-12 (1st Cir.2011) (*citing Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A "short and plain" statement needs only enough detail to provide a defendant with "fair notice of what the… claim is and the grounds upon which it rests."  *Id.* (*citing Twombly*, 550 U.S. at 555; *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

In *Swierkiewicz*, the U.S. Supreme Court held: "An employment discrimination complaint need not contain specific facts establishing a prima facie case under the *McDonnell Douglas* framework, but instead must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief…'" *Id*. Moreover, the Court further explained that, "Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. 'Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" *Id*. at 515.

B.  <u>Plaintiff is not Required to Plead a Prima Facie Case</u>

Defendant is mistaken as to the law on pleading an employment discrimination claim. As stated above, Romero is not required to plead specific facts establishing a prima facie case under the *McDonnell-Douglas* framework. *See Id*. Since *Swierkiewicz*, the U.S. Supreme Court has issued the *Twombly/Iqbal* cases. Importantly, the U.S. Supreme Court reasoned that the *Twombly* plausibility standard was not inconsistent with *Swierkiewicz*. *See Bell A. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Since *Twombly/Iqbal*, this Court and the First Circuit have reaffirmed that Plaintiff is not required to plead a prima facie case. "In employment discrimination cases, 'plaintiffs need not plead facts in the complaint that establish a prima facie case ... nor must they 'allege every fact necessary to win at trial.'" *Knight v. O'Reilly Auto Enterprises, LLC*, No. 2:17-CV-300-NT, 2019 WL 1302545, at *7 (D. Me. Mar. 21, 2019) (*citing Garayalde–Rijos v. Municipality of Carolina*,

747 F.3d 15, 24 (1st Cir. 2014)).[2]  Indeed, since *Twombly*/*Iqbal*, the United States Courts of Appeals, in multiple jurisdictions, have reversed district courts that require the plaintiff to plead a prima facie case. *See Freeman v. Metro. Water Reclamation Dist. of Greater Chicago*, 2019 WL 2481926, at *2 (7th Cir. June 14, 2019) (reversing district court's dismissal of race discrimination claim for failure to plead an element of the *McDonnell Douglas* framework); *Cicalese v. U. of Texas Med. Branch*, 924 F.3d 762, 766-68 (5th Cir. 2019) ("We reiterate, however, that a court errs by requiring a plaintiff to plead something more than the 'ultimate elements of a claim'. A Court thus inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss."); *Cook v. George's, Inc*., 2020 WL 1160673 (8th Cir. 2020) (reversing district court's decision to dismiss the complaint for failure to plead specific elements of a prima facie case).

Given the widespread and frequently-reaffirmed precedent, Romero is not required to plead satisfactory job performance in order to establish a plausible sex discrimination claim under Fed. R. Civ. P. 12(b)(6). The satisfactoriness of Romero's job performance is more appropriately an evidentiary matter, not a pleading issue. As a practical matter, discovery can shed light on whether Romero's job performance was satisfactory. Employers frequently dispute that the employee's job performance was satisfactory and cite to it as a reason for termination. Consequently, the employee's job performance is more appropriately considered under the *McDonnell Douglas* evidentiary framework. At the pleading stage, however, an employee's

---

[2] Defendant relies on the *Knight* case. In *Knight*, the Court did not evaluate the sex discrimination claim under the Fed. R. Civ. P. 12(b)(6) standard. *See Knight*, No. 2:17-CV-300-NT, 2019 WL 1302545, at *6 (The Court denied summary judgment as to the sex discrimination claim). The Court did, however, evaluate a 12(c) motion for judgment on the pleadings to the plaintiff's ADA claim. Notably, the Court entered judgment for the defendant because, among other reasons, the plaintiff did not plead a harmful stereotype, unlike Romero in this case. *Id*. at *8.

failure to plead a satisfactory job performance does not mean that the employee's claim is implausible.

### C.  Romero did, in fact, Plead a Prima Facie Case.

Even if Romero is required to plead a prima facie case, Romero has successfully pled a prima facie case for sex discrimination. This Court has previously explained that if a plaintiff pleads a prima facie case, then the plaintiff's pleadings must necessarily be plausible:

> In *Rodriguez-Reyes*, the issue was whether a plaintiff had to satisfy the prima facie case standard at the pleading stage. In saying no, the First Circuit said that the prima facie case standard is "a crucible hotter than the plausibility standard demands." 711 F.3d at 53 (emphasis added); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the "plausibility standard" is relatively low, "not akin to a 'probability requirement'"). I agree with *Gascard* that, following *Rodriguez-Reyes*, if a complaint properly alleges facts to support the "hotter" prima facie elements, it ipso facto satisfies the plausibility standard. *See Gascard v. Franklin Pierce Univ.*, No. 14-CV-220-JL, 2015 WL 1097485, at *4 (D.N.H. Mar. 11, 2015).

*Corson v. Modula, Inc.*, No. 2:20-CV-104-DBH, 2020 WL 4194498, at *5 (D. Me. July 21, 2020). Accordingly, if Romero pled a prima facie case, then the Amended Complaint is plausible.

Romero pled a prima facie case for sex discrimination. "A plaintiff satisfies her prima facie burden in a sex discrimination claim by establishing four elements: "(1) she was within a protected class, (2) [she] possessed the necessary qualifications and adequately performed her job, (3) but was nevertheless dismissed, and (4) her employer sought someone of roughly equivalent qualifications to perform substantially the same work." *Corson*, No. 2:20-CV-104-DBH, 2020 WL 4194498, at *4 (*quoting Gomez-Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 662 (1st Cir. 2010)).

Defendant argues that Romero did not plead a prima facie case because she did not adequately plead a satisfactory job performance. While courts have found an allegation asserting

causation to be conclusory since such an allegation regarding an employer's intent is fact specific and typically dependent on circumstantial evidence, it is completely appropriate for a plaintiff to allege that they performed their job in a satisfactory manner. It is difficult to envision what types of specifics are lacking, particularly for an employee who never received performance counselling or performance evaluations.  Furthermore, allegations that Romero worked for Defendant, then resigned, and then was rehired by Defendant is evidence that Defendant found her performance during her first period of employment to be satisfactory. (Am. Compl. ¶¶ 120-22). Also, allegations reflecting that Defendant failed to assert that Romero had any performance issues at the time of her termination and has failed, to the present, to assert that there were any performance issues that led to her termination provide further support that Romero performed her job in a satisfactory manner. (Am. Compl. ¶¶ 128-41).

When viewed in the light most favorable to Romero, it is clear that Romero's factual allegations are sufficient to support that her job performance was satisfactory. Defendant did not argue that Romero failed to plead the other elements of a prima facie case.[3]

### D.  Romero Plausibly Pled Causation

Defendant further argues that Romero's sole allegation to support causation is the so-called "bald assertion" that Romero experienced the sexist stereotype that women will always support their male partner, which Defendant argues is conclusory. As set out above, the prima facie case does not require a showing of causation beyond the four elements of protected class,

---

[3] Defendant does not challenge that Romero was in a protected class by pleading that "Romero is female". (Am. Compl. ¶ 119). Defendant does not contend that Romero failed to plead that she was terminated. Nor does Defendant argue that Romero failed to plead that Defendant "sought someone of roughly equivalent qualifications to perform substantially the same work". Given that Defendant's rationale for Romero's termination relies in part on her "unpredictable track record at work and the likelihood that she would once again abandon her employment", it is clear that Defendant was in need of a predictable and reliable employee. (Am. Compl. ¶ 136). Viewed in the light most favorably to Romero, Defendant's rationale for Romero's termination implies that there was an ongoing demand or need for Romero's job position to be filled.

satisfactory performance, adverse employment action, and ongoing need for position and so Defendant's argument lacks merit.  In addition, even if some showing of causation beyond the prima facie case were required, Defendant's argument ignores the entirety of the factual landscape detailed within the four corners of the Amended Complaint.

First and foremost, courts have long recognized that Title VII prohibits making employment decisions on the basis of gender stereotypes. *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989); *Los Angles, Department of Water & Power v Manhart*, 435 U.S. 702, 707 (1978) ("It is now well recognized that employment decisions cannot be predicated on mere 'stereotyped' impressions about the characteristics of males or females."); *Dothard v. Rawlinson*, 433 U.S. 321, 334-35 (1977); *see also Schwenk v. Hartford*, 204 F.3d 1187, 1202 (9th Cir. 2000); *Rosenfield v. Southern Pacific Co*., 444 F.2d 1219, 1225 (9th Cir. 1971); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 575 (6th Cir. 2004); *Dawson v. Bumble & Bumble*, 398 F.3d 211, 218 (2nd Cir. 2005); *Chadwick v. WellPoint, Inc*., 561 F.3d 38, 43 (1st Cir. 2009).

Romero's pleadings comply with the *Knight* case cited by Defendant. In *Knight*, the Court stated: "An associational disability claim must be based on an unfounded stereotype or assumption about the Plaintiff or her children with disabilities. This Complaint does not allege any such unfounded stereotype or assumption or provide any factual support for such a claim." *Knight*, No. 2:17-CV-300-NT, 2019 WL 1302545, at *8. Unlike the *Knight* plaintiff, Romero specifically pled the stereotype (Am. Compl. ¶ 141) and factual allegations to support it. (Am. Compl. ¶¶ 127 – 41).

The facts supporting Romero's gender stereotyping claim revolve around the circumstances in which she was terminated. Defendant failed to provide a concrete reason for Romero's termination. Instead, Romero pled how Defendant could only speculate as to the

reason for termination and how she was likely terminated because of her association to Rodriguez. (Am. Compl. ¶¶ 127 – 41). The Amended Complaint incorporates part of Armstrong's submission to the Maine Human Rights Commission, where Armstrong referred to Romero's previous resignation: "After Mr. Rodriguez quit, Ms. Romero failed to appear at her next scheduled shifts. Ms. Witham called Ms. Romero by telephone about her absence. Ms. Romero laughed and stated that she had already turned in her badge and was quitting." (Am. Compl. ¶ 135). Returning to Romero's current termination, Armstrong explained: "FSS determined at that point that it no longer wished to continue Ms. Romero's at-will employment. While I do not specifically recall advising Arev Witham to terminate Ms. Romero, I *believe* it was based on Romero's own unpredictable track record at work and the likelihood that she would once again abandon her employment." (Am. Compl. ¶ 136) (*Emphasis* mine). Notably, in his statement, Armstrong was only speculating as to Romero's reason for termination, which was based on Armstrong's belief. *See* (Am. Compl. ¶ 136). As a result, Armstrong did not provide an actual reason for Romero's termination. Instead, Armstrong only speculated that Romero's termination was based on the likelihood that Romero would "once again abandon her employment". In the absence of a concrete reason for termination, and viewed in the light most favorable to Romero, she pled, plausibly, that Defendant terminated her employment because of the sexist stereotype that women will always support their male partners. (Am. Compl. ¶ 141).

Additionally, Defendant is incorrect that Paragraph 141 is conclusory. A "conclusory" statement is a statement "expressing a factual inference without stating the underlying facts on which the inference is based." Conclusory, Black's Law Dictionary (11th ed. 2019). Straightforward examples of "conclusory" statements include: "Defendant was negligent," "Defendant caused Plaintiff's injuries," and "Defendant breached the standard of care." Perhaps

the most famous example of a "conclusory" statement was from the *Twombly* case, where the U.S. Supreme Court concluded that pleading "conspiracy" based on an "unlawful agreement" without specifying anything more is a "conclusory statement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007). Another well-known example of a conclusory statement was from the *Iqbal* case, where the Court determined that the statement, "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest," was a conclusory statement because it merely recited an element of a discrimination claim without providing any factual support. *Iqbal*, 556 U.S. at 681.

All of the foregoing statements mentioned are conclusory because they all lack any factual anchor whatsoever. Instead, those statements are merely recitations of the elements of a cause of action or mere legal posturing. Unlike the actual conclusory statements discussed above, Romero's factual allegation as to the existence of a well-known sexist stereotype is not conclusory when viewed in connection with the circumstances of her termination and Armstrong's actual statements regarding Romero's termination. Moreover, the existence of a stereotype is a fact, not a legal contention. A stereotype can be proven through judicial notice or expert witness testimony. Defendant, however, goes a step further and claims that the sexist stereotype does not exist.

E.   The Sexist Stereotype Exists and can Support a Title VII Claim

Defendant's final argument is that the sexist stereotype that women support their male partners does not exist in "logic or the law". Unfortunately, this sexist stereotype does, in fact, exist and pervades history. Defendant's denial of this stereotype ignores history and, as explained above, long-established judicial precedent.[4] Given the longstanding and well-

---

[4] In addition to the cases cited previously in this brief, there are many more cases establishing Title VII's prohibition against sex stereotyping. *See Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1748–49 (2020) (using 1950's

established precedent regarding Title VII's broad prohibition against making employment

decisions on the basis of sexist stereotypes, the question then becomes whether the sexist

stereotype alleged by Romero is an actual stereotype.

The famous singer, Tammy Wynette, epitomized this stereotype in her 1968 hit song,

"Stand by Your Man", which was released in the midst of the women's rights movement and

was controversial because it encouraged the stereotype that women always support their male

partners. In an article about Tammy Wynette, Calvin Gilbert recounted the statements of Patricia

Ireland, the former President of the National Organization for Women:

> "There was all this discussion about freedom and liberation," she explains. 'We
> had sayings going around like, 'A woman needs a man like a fish needs a
> bicycle.' And here's Tammy Wynette singing 'Stand by Your Man.'"

Calvin Gilbert, "Political Controversies Found Wynette and McGraw,

https://web.archive.org/web/20080305184834/http:/www.cmt.com/artists/news/1471365/200304

18/wynette_tammy.jhtml. Years later, during the 1992 Presidential Campaign, Hilary Clinton

famously said, "I'm not sittin' here some little woman standing by my man like Tammy

Wynette. I'm sittin' here because I love him and I respect him and I honor what he's been

through and what we've been through together."[5]

Indeed, even Courts have cited to this song and the corresponding stereotype in

discussing various legal issues. *U.S. v. Taylor*, 617 Fed. Appx. 558, 561 (7th Cir. 2015)

---

gender stereotypes an example of a "simple test"); *Morales-Cruz v. U. of Puerto Rico*, 676 F.3d 220, 224–25 (1st
Cir. 2012) ("A gender-stereotyping claim arises when an individual suffers an adverse employment action because
she either conforms or fails to conform to some stereotype or stereotypes attributable to her gender."); *Thomas v.
Eastman Kodak Co*., 183 F.3d 38, 59 (1st Cir. 1999) ("The Supreme Court has long recognized that unlawful
discrimination can stem from stereotypes and other types of cognitive biases, as well as from conscious
animus…this includes 'the entire spectrum of disparate treatment of men and women resulting from sex
stereotypes…'").

[5] Sixty Minutes, "Hilary Clinton's First 60 Minutes Interview", https://www.youtube.com/watch?v=-UqKNgrwK8E
(quoted at 9 minutes and 8 seconds (9:08)).

(unpublished) ("Taylor's wife's refusal to testify against her husband, the judge reasoned, displayed a 'stand by your man' attitude that was 'beyond belief.'"); *see also In re Boerger*, 67 B.R. 922, 925 (Bankr. W.D. Mo. 1986) ("She was following the precepts of the popular song to "stand by your man" and this Court can see no reason, legally, ethically or morally, to penalize her any further than she has already been devastated by the loss of all her non-exempt worldly goods."). There is, perhaps, no greater example of this stereotype than in the realm of domestic violence and criminal law, where prosecutors and defense attorneys regularly deal with the stereotype that women always support their male partners, especially in situations where the female victim refuses to testify against the male defendant. Accordingly, Defendant's contention that this stereotype does not exist in "logic or the law" is patently false.

As stated above, when viewed in the light most favorably to Romero, the Amended Complaint details how Romero was subjected to this sexist stereotype. In referencing Romero's previous resignation, where she resigned after Rodriguez resigned, Defendant acknowledged that she was fired given the "likelihood that she would once again abandon her employment." (Am. Compl. ¶ 136). The allegations support that Defendant treated Romero differently and worse because of her sex, i.e., the expectation that she would fulfill the gender norm and stereotype of "standing by her man". Moreover, Romero affirmatively pled the existence of the sexist stereotype. (Am. Compl. ¶ 141).

F.   An Employer who Terminates an Employee because of Relationship Status Discriminates Against an Employee on the Basis of Sex

Towards the end of Defendant's Motion to Dismiss, Defendant asked a series of rhetorical questions in an attempt to undermine the stereotype's connection to sex. Defendant first asks, "Even assuming that FSS believed that Ms. Romero supported or had the ability to control Mr. Rodriguez's actions, why is that sexist? If the sexes of those involved were reversed,

would the same assumption not be sexist?" The answer is, yes, it would be sexist because the assumption is invariably tied to sex, regardless of whether the stereotype is reversed or not. There is no escaping the fact that the employer must consider sex in assuming that the girlfriend/boyfriend will support their boyfriend/girlfriend. This principle is highlighted by the holding in *Bostock*.

In *Bostock*, the U.S. Supreme Court held, "An employer violates Title VII when it intentionally fires an individual employee based *in part* on sex. It makes no difference if other factors besides the plaintiff's sex contributed to the decision or that the employer treated women as a group the same when compared to men as a group. A statutory violation occurs if an employer intentionally relies *in part* on an individual employee's sex when deciding to discharge the employee." *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1734 (2020) (*Emphasis* added).

For example, if an employer has a policy that it will fire the significant other of a terminated employee, then that decision, in part, involves the sex of the employee and violates Title VII. If Defendant terminated Romero because she was the wife or girlfriend of Rodriguez, then the decision to terminate Romero would be, in part, based on her sex because it relies on Romero's status as a member of the subclass of women that Rodriguez is attracted to and in a relationship with. In other words, because Romero is a member of the subclass of women that Rodriguez is attracted to and in a relationship with, Defendant treated her differently. Similarly, if Romero was a male, and Defendant fired Romero for being the husband or boyfriend of Rodriguez, then that decision would still be based, in part, on Romero's sex because it relies on Romero's status as a member of the subclass of men that Rodriguez is attracted to or in a relationship with. In both situations, the employer has to consider, in part, that it is treating a

member of the subclass of the sex that Rodriguez is attracted to and in a relationship with differently and worse than a member of the other sex. In other words, but for Romero's status as a female that Rodriguez is attracted to and in a relationship with, Romero would not have been terminated. Accordingly, the employer cannot escape that it must, in part, consider sex in arriving at its decision to fire an employee's significant other, even if it is only one of multiple considerations.

Ultimately, Defendant's question "If the sexes of those involved were reversed, would the same assumption not be sexist?", is a non-sequitur. Unlawful stereotypes necessarily exist in a one-sided manner. For instance, if both men and women are believed to jump when frightened, then it is not one sided because it applies more broadly to all sexes, and it is therefore not an unlawful stereotype. However, if only women are believed to jump when frightened, then it is one sided because it only applies to one sex, and it is therefore a stereotype. Consequently, if an employer were to terminate a woman because she was expected to jump when frightened, then the employer violated Title VII. Similarly, Defendant terminated Romero because Defendant expected Romero to stand by her man and resign after Rodriguez's termination. Accordingly, if Romero were a male, then Defendant would not have terminated her because Defendant would not have expected her to conform to the sexist stereotype that women will always support their male partners, i.e., stand by your man.

IV.   <u>CONCLUSION</u>

WHEREFORE, in light of the foregoing, Plaintiff respectfully requests this Honorable Court deny Defendant's Motion to Dismiss and award any other relief as it deems appropriate.

Dated: December 21, 2023                    _/s/ Martin P. Tartre____

                                            Martin P. Tartre
                                            Chad T. Hansen
                                            Attorneys for the Plaintiff

                                            EMPLOYEE RIGHTS GROUP
                                            92 Exchange Street 2nd floor
                                            Portland, Maine 04101
                                            Tel. (207) 874-0905
                                            Fax (207) 874-0343
                                            chad@employeerightslaw.attorney
                                            martin@employeerightslaw.attorney


## CERTIFICATE OF SERVICE

I certify that I served the foregoing document upon all counsel of record through this Court's electronic filing system on the date below.

Date: December 21, 2023                     _/s/ Martin P. Tartre_