## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

JAYLYN ROMERO and )
LEXUS RODRIGUEZ, )
                                 )
           Plaintiffs, )
                                 )
v. )    Docket No. 2:23-cv-00416-NT
                                 )
FLIGHT SERVICES & SYSTEMS, )
INC., and FRONTIER AIRLINES, )
                                 )
           Defendants. )

## ORDER ON DEFENDANT FLIGHT SERVICES & SYSTEMS, INC.'S PARTIAL MOTION TO DISMISS

Plaintiff Jaylyn Romero alleges, among other things, that the Defendants violated the sex discrimination provisions of Title VII of the Civil Rights Act of 1964 and the Maine Human Rights Act when they terminated her employment. Defendant Flight Services & Systems, Inc. has moved to dismiss the two sex discrimination counts (ECF No. 11). For the reasons set forth below, the Defendant's motion is **DENIED**.

## BACKGROUND

Defendant Flight Services & Systems, Inc. ("**FSS**") is an aviation service company that services Defendant Frontier Airlines ("**Frontier**") and has a location at the Portland Jetport in Maine. Am. Compl. ¶¶ 18–19 (ECF No. 6). The female Plaintiff, Jaylyn Romero, started working for FSS as a ticket agent in 2021. Am. Compl. ¶¶ 119–20. The male Plaintiff, Lexus Rodriguez, is her partner and also worked for FSS in 2021. Am. Compl. ¶¶ 20, 124.  Mr. Rodriguez began working for

FSS as a ramp agent and was promoted to ramp supervisor after he completed training and became a certified load master for Frontier aircraft. Am. Compl. ¶¶ 20–30, 124.

In December of 2021, Ms. Romero and Mr. Rodriguez both voluntarily resigned from FSS. Am. Compl. ¶¶ 32, 121. Both were rehired in January of 2022. Am. Compl. ¶¶ 32, 122.

While working for FSS, Mr. Rodriguez witnessed that many aircraft-loading crew members violated Frontier policies and procedures in an unsafe way, including loading a Frontier plane with baggage before Mr. Rodriguez, the load master, had arrived with the load plan to supervise. Am. Compl. ¶¶ 33–40. On February 19, 2022, Mr. Rodriguez reported what he reasonably believed to be an unlawful and unsafe loading practice, first to a training manager and then later to the FSS manager, Arev Witham. Am. Compl. ¶¶ 41–50. The Plaintiffs allege that Ms. Witham made the training manager unload and reload the plane and that tempers were heated. Am. Compl. ¶¶ 53–56. In a meeting later that day, which a Frontier regional manager joined by phone, the policy regarding whether the plane could be loaded before the load plan and master arrived continued to be hotly debated. ¶¶ Am. Compl. 61–78. The Plaintiffs allege that Mr. Rodriguez's statements to Ms. Witham and others— including a report Mr. Rodriguez made to a Frontier hotline the morning of February 21, 2022—were protected activity under the Maine Whistleblowers' Protection Act. Am. Compl. ¶¶ 45, 51, 68, 74, 88, 90–91, 95–96, 102–03, 125.

On the afternoon of February 21, 2022, Ms. Witham sent a group text message to Mr. Rodriguez and Ms. Romero.[1] Am. Compl. ¶ 112. Ms. Witham terminated Mr. Rodriguez's and Ms. Romero's employment in the same text message: "Good afternoon, Effective immediately you are no longer employed by FSS. Please return your SIDA badges to OPS center ASAP. If you have any questions please contact HR." Am. Compl. ¶¶ 113–14, 126–27.

In later proceedings before the Department of Labor, Ms. Witham submitted an affidavit in which she described Mr. Rodriguez's conduct relating to the February 19, 2022 incident and testified: "After discussion with FSS management, I terminated Rodriguez and Romero due to the above conduct." Am. Compl. ¶¶ 128–30. In proceedings before the Maine Human Rights Commission ("**MHRC**"), Ms. Witham stated that the FSS Senior Director of Safety, Phil Armstrong, told her to terminate Ms. Romero. Compl. ¶ 132.

Mr. Armstrong submitted his own statement to the MHRC, in which he described Ms. Romero's prior employment with FSS before FSS rehired her in January of 2022. Am. Compl. ¶¶ 133–134. He stated that: "After Mr. Rodriguez quit [in December of 2021], Ms. Romero failed to appear at her next scheduled shifts. Ms. Witham called Ms. Romero by telephone about her absence. Ms. Romero laughed and stated that she had already turned in her badge and was quitting." Am. Compl. ¶ 135.

---

[1]    The fourth person on the group text was Phil Armstrong, the FSS Senior Director of Safety. Am. Compl. ¶ 112 (ECF No. 6).

To explain why FSS terminated Ms. Romero along with Mr. Rodriguez in February, Mr. Armstrong stated:

> FSS determined at that point that it no longer wished to continue Ms. Romero's at-will employment. While I do not specifically recall advising Arev Witham to terminate Ms. Romero, I believe it was based on Romero's own unpredictable track record at work and the likelihood that she would once again abandon her employment. Ms. Romero was not terminated based on her association with Mr. Rodriguez, and Mr. Rodriguez' (sic) workplace conduct did not factor into Ms. Romero's termination.

Am. Compl. ¶ 136.

The Plaintiffs allege that FSS terminated Ms. Romero's employment because of her association with Mr. Rodriguez. Am. Compl. ¶ 138. They allege that Phil Armstrong's stated explanation for Ms. Romero's termination—"the likelihood that she would once again abandon her employment"—is an admission that Mr. Rodriguez's termination was the reason for Ms. Romero's termination. Am. Compl. ¶ 137. Ms. Romero resigned in 2021 after Mr. Rodriguez, her partner, resigned so the Plaintiffs allege that "the only plausible reason there was a 'likelihood' that Romero would allegedly 'once again abandon her employment' was because Rodriguez was no longer employed with FSS." Am. Compl. ¶ 137. The Plaintiffs thus assert that "FSS fired Romero because of sex discrimination, that is, a sexist stereotype that a female partner will always support her male partner's actions, or, that a female partner has the ability and obligation to control her male partner." Am. Compl. ¶ 141.

On November 6, 2023, Ms. Romero and Mr. Rodriguez filed this action. Compl. (ECF No. 1). Ms. Romero and Mr. Rodriguez allege a claim of retaliation under the Maine Whistleblowers' Protection Act (Count I), Ms. Romero alleges a claim of sex

discrimination under Title VII of the Civil Rights Act of 1964 ("**Title VII**"), 42 U.S.C. § 2000e-2 (Count II) and a claim of sex discrimination under the Maine Human Rights Act ("**MHRA**") (Count III), and Mr. Rodriguez alleges a claim of tortious interference (Count IV). Am. Compl. ¶¶ 142–64. FSS filed an answer. Flight Services & Systems, Inc.'s Answer to First Am. Compl. (ECF No. 10). A few minutes later, FSS moved to dismiss Counts II and III (Ms. Romero's claims of sex discrimination) for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Flight Services & Systems, Inc.'s Partial Mot. to Dismiss ("**Def.'s Mot.**") (ECF No. 11).

## LEGAL STANDARD

FSS styles its motion as a partial motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion asserting a Rule 12(b)(6) defense "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Here, FSS did not file its Rule 12(b)(6) motion before it filed its answer. I therefore treat FSS's motion as a motion for judgment on the pleadings under Rule 12(c). *See Patrick v. Rivera-Lopez*, 708 F.3d 15, 18 (1st Cir. 2013). It is a distinction without much difference, however, because "[a] motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss." *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008).

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), 'a complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief,' with 'enough factual detail to make the asserted claim

plausible on its face.' " *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 33 (1st Cir. 2022) (quoting *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015)). This boils down to a two-step analysis. First, I "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Second, I "must determine whether the 'factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* at 224 (quoting *Iqbal*, 556 U.S. at 678). As with Rule 12(b)(6), a Rule 12(c) motion also "calls for an assessment of the merits of the case at an embryonic stage," so "the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom." *Pérez-Acevedo*, 520 F.3d at 29 (quoting *R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178 (1st Cir. 2006)).

## DISCUSSION

FSS argues that Ms. Romero has failed to state a claim for sex discrimination. Title VII makes it unlawful for employers "to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C.A. § 2000e–2(a)(1). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[P]laintiffs need not plead facts in the complaint that establish a prima facie case under Title VII nor must they 'allege every fact necessary to win at trial.' "

*Garayalde-Rijos v. Mun. of Carolina*, 747 F.3d 15, 24 (1st Cir. 2014) (quoting *Rodríguez-Vives v. P.R. Firefighters Corps of P.R.,* 743 F.3d 278, 283 (1st Cir. 2014)). Accordingly, "no single allegation need establish some necessary element of the cause of action, provided that, in sum, the allegations of the complaint make the claim as a whole at least plausible." *Id.* (citation and internal quotation marks omitted).

Although plaintiffs are not required to plead facts that would establish the elements of their prima facie case at the motion-to-dismiss stage, those elements "may be used as a prism to shed light upon the plausibility of the claim." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013). To establish a gender-based discriminatory discharge under Title VII, "the plaintiff must show that (1) she was within a protected class, (2) she possessed the necessary qualifications and adequately performed her job, (3) but was nevertheless dismissed and (4) her employer sought someone of roughly equivalent qualifications to perform substantially the same work."[2] *Gómez-González v. Rural Opportunities, Inc.*, 626 F.3d 654, 662 (1st Cir. 2010) (quoting *Rodriguez–Torres v. Caribbean Forms Mfr., Inc.,* 399 F.3d 52, 58 (1st Cir. 2005).

---

[2]    FSS frames the fourth element a little differently, as requiring that there be "a causal connection between [Ms. Romero's] membership in a protected class and the adverse employment action. Flight Services & Systems, Inc.'s Partial Mot. to Dismiss 4–5 (ECF No. 11). FSS cites *Knight v. O'Reilly Auto Enterprises, LLC*, No. 2:17-cv-300-NT, 2019 WL 1302545, 2019 U.S. Dist. LEXIS 47018 (D. Me. Mar. 21, 2019) for its articulation of the prima facie elements. In *Knight*, I expounded on the fourth element by continuing, "e.g., in the case of a firing, that the position was filled by someone with similar qualifications." 2019 WL 1302545, at *4, 2019 U.S. Dist. LEXIS 47018 at *9 (quoting *Bhatti v. Trs. of Bos. Univ.*, 659 F.3d 64, 70 (1st Cir. 2011)). So the elements that the two sides propose here are essentially the same. "The same four elements establish a prima facie case for both the Title VII and MHRA discrimination claims." *Corson v. Modula*, No. 2:20-cv-104-DBH, 2020 WL 4194498, at *4, 2020 U.S. Dist. LEXIS 128437, *12 (D. Me. July 21, 2020); *see Gavrilovic v. Worldwide Language Res., Inc.*, 441 F. Supp. 2d 163, 177 (D. Me. 2006) ("Maine courts look to Title VII case law in construing the MHRA.").

Here, FSS puts forth two arguments for why the sex discrimination claims should be dismissed. First, it asserts that the complaint does not plead sufficient facts to infer that Ms. Romero adequately performed her job. Def.'s Mot. 5. Second, FSS contends that the complaint lacks any facts connecting Ms. Romero's termination to a discriminatory motive. Def.'s Mot. 5. It argues that her discrimination claim is based on a sexist stereotype, but the complaint does not articulate facts to show that the purported stereotype exists, or, if it does, that such a stereotype had anything to do with Ms. Romero's termination. Def.'s Mot. 5–6.

As to her job performance, Ms. Romero states that she "was qualified for her job and performed her job duties satisfactorily." Am. Compl. ¶ 123. While the complaint does not include specific facts about performance reviews or other types of evaluations that might illustrate that statement (which is not surprising given the brief tenure of her employment), the fact that FSS rehired Ms. Romero the month after she resigned supports the inference that FSS determined that she was qualified and could adequately perform her job.

FSS's argument that the complaint does not allege any facts to show that Ms. Romero was the victim of a sexist stereotype fares no better. Both the Supreme Court and the First Circuit have recognized that sex-based stereotyping is an impermissible form of discrimination. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989); *Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 44 (1st Cir. 2009). The complaint alleges that one reason FSS gave for firing Ms. Romero was her "unpredictable track record at work and the likelihood that she would once again abandon her employment." Am.

Compl. ¶ 136. I can infer from all the factual allegations that FSS believed that Ms. Romero quit in 2021 because her boyfriend quit. And that FSS thought that, because it was terminating Mr. Rodriguez's employment in 2022, Ms. Romero would automatically leave rather than independently assess the situation and do what was best for her own career. As the Plaintiff points out in her opposition, this type of "stand by your man" stereotype is not unfamiliar and has been acknowledged by other courts. Pl.'s Opp'n to Def.'s Mot. to Dismiss 11–13 (citing cases). Despite the Defendant's skepticism, I have no trouble concluding that a stand-by-your-man sex-based stereotype exists and that Ms. Romero has plausibly alleged that FSS applied that stereotype to her when it terminated her employment along with Mr. Rodriguez's.[3] "[T]he essence of employment discrimination is penalizing a worker not for something she did but for something she simply is." *Chadwick*, 561 F.3d at 47. Here, Ms. Romero has plausibly alleged that she did nothing wrong but was fired anyway because of a sex-based stereotype based on who she is: Mr. Rodriguez's girlfriend. "All the Plaintiff is required to show at this stage is 'evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion.' " *Chadwick v. Wellpoint, Inc.*, 493 F. Supp. 2d 141, 143 (D. Me. 2007) (quoting *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 312

---

[3]     That Ms. Romero left FSS in December 2021, the same month that Mr. Rodriguez quit, is some evidence that FSS was not stereotyping a female employee but rather basing an employment decision on Ms. Romero's previous action. But the fact that a different inference can be drawn does not doom the claims. On a motion to dismiss, I consider the complaint's allegations as true and draw all reasonable inferences in the Plaintiff's favor.

(1996)). Reading the complaint as a whole, Ms. Romero has sufficiently alleged a plausible claim for sex discrimination under Title VII and the MHRA.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant FSS's motion to dismiss Count II and Count III.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 25th day of April, 2024.